The court will proceed to the second case of the day, Bodum v. A New Top Casting Mr. Bennex? Good morning. May it please the court. Bodum seeks a perpetual monopoly in what it claims as its trade dress and what it describes as its shamboard coffee press, to exclude others, including my client, in perpetuity from selling a device which looks like it or anything like it. This court has long been concerned with the perpetual monopoly of trade dress protection. It's addressed the issue of functionality as it pertains to that protection in a number of cases. It's addressed functionality that's been expressed in patents, and it has addressed functionality that has been admitted by the holder or purported holder of the trade dress. Regarding patents as admissions of functionality, this court stated in Thomas and Betts that the safeguard against an impermissible extension of a patent monopoly by a trademark, as noted above, is the functionality doctrine. The configuration of an article cannot receive trademark registration if its purpose is to contribute functional advantages to the article or if the configuration results from functional considerations. Regarding admissions of functionality, the question is not whether the claimed trade dress has less utility than alternatives. Focusing on that question would be contrary to precedent and sound interpretation of the Lanham Act. It would also encourage peculiar arguments by trade dress plaintiffs criticizing their own products, as plaintiffs did in this case. That was from Arlington Specialties, which at least two members of this court are well familiar with of this panel. This is an unregistered trade dress. Bodom is entitled to no presumption of non-functionality. It was their burden to trial to demonstrate that their product was non-functional, to demonstrate that it is not essential to the use or purpose of the article, nor does it provide a cost advantage. What are the parameters of function? I mean, I have a friend that uses one of these every day. And it's supposed to crush down and separate the coffee from the water or make coffee or whatever it is. Unfortunately, I don't drink it, so I don't have familiarity with it. But I look at the picture here on page four of the red brief, and the comparatives look exactly alike, almost, very close. And then these little feet, when all these pictures of all these other compressors, most of them don't have any feet. Are you saying that feet or whatever, I think they call them that, don't they? Yeah, they're called feet. Yeah. Are they functional? Are they for decoration? Are they for making them look unique or what? Well, I think the functionality issue pertains to the device as a whole, for one thing. I mean, you can't have... Well, of course, yeah. There's a lot of things that make coffee this way and with this method. Right. And I don't know how, but as it's described, it's just you push down and, I guess, squeeze the coffee grounds through water and it makes coffee or something like that. I think that's correct. The issue in this case, I think, pertains to the product as what's referred to as a product configuration trade dress. In other words, it is a trade dress that's comprised of many different elements. The elements at the core of this device, the carafe and the plunger, which you've just described, are admitted to be functional. They're not claiming that there is any trade dress in the carafe, which is odd because the main purpose or the main appearance, the overall appearance of this trade dress, which is the test, is dictated by those two main elements. The carafe itself is the center of this. Looking at the pictures of a lot of others, the carafe varies a lot. Some of them are not see-through, others are. Correct. And that's another issue in this case. If you look at the reply brief of Bodum in this case, they indicate that the carafe, the clear nature of the carafe, is part of their trade dress. Well, in a trial, their own expert said that he had no opinion as to whether or not that the clear nature of the carafe was functional or not. I suggest to this court that that statement itself is enough to send this back for a new trial. You can't have an expert say he doesn't know anything about a part of the function or part of the device that they claim is non-functional. He has to testify that all elements of the device are non-functional. Not every single one, right? All elements? I think if they claim it as an overall trade dress, they have to show that the parts of that trade dress that they claim are non-functional. The issue is best pointed out by the dome top and the plunger. The dome top, they say, is part of what they call dressing up this trade dress. Well, the Consumer Product Safety Commission said you have to have a certain shape, a lip on the inside of that dome top, so you can turn it and pour the coffee out. They didn't have any answer for that at trial, and they didn't have any answer for that in their briefs. The other one is the plunger, the knob on top of the plunger. Well, the Consumer Product Safety Commission said that that knob had to be reduced in size for safety considerations. Now, they didn't address either of these things at trial, nor did they address them in their briefs. The point of both of those is that those are functional elements. There's no greater function, I don't think, just in common sense. In their design, the way that they look, it doesn't have to be a knob in order to have something to grab on to. I use a French press every morning, and mine isn't a knob. Right. But the fact that the Consumer Product Safety Commission told them how big it had to be, I think, demonstrates that that is a functional element. It could be a flat disc. It could be. It doesn't have to be a knob. Right. It could be stainless steel. It doesn't have to be glass. It doesn't have to have feet. That's correct. But if you look at the claim that they make in their overall trade dress claim, they would say, and I have a list of 89 people here that they've sent cease and desist letters to that have flat plungers, that have flat tops. As a matter of fact, in this case, they've told Amazon that my client can't sell anything that has a flat top and a flat plunger. That's how broad they think this trade dress is. And I would suggest you're absolutely right, Your Honor, that it can be made in different shapes. But that fact doesn't mean that the plunger itself is trade dress. Is that the case with all these other pots that you have pictures of? I don't even know whether these are your pictures or not. Those are the alternative. They're actually in Bodum's brief. Those are the alternative designs that they presented at trial. Well, I mean, there are a lot of differences, and there's some similarities. Some have a flat top on the plunger. Some have more of a round top, and some are bigger, and some are smaller. Some seem to be pointed. I don't know how that works. Well, I think the presence of alternative designs has a couple of significant points. First, the expert Anders said that to be functional, that the device has to be made in one particular way. That's not the law. The law is that it is in a shape because it works better in that shape. If Mr. Anders, who is their expert and whose standard they've repeated in their brief, is right, that there is only one shape for a particular purpose, and that's what is functionality, then that means that any device that has an alternative design is trade dress. It's nonfunctional, and that's not the law. This trade dress issue pertains to each and every one of these elements. I want to go a little bit further into what the trial court did when it made the same mistake at trial in two ways. First, it said it adopted Mr. Anders' statement of the law, that there is only one way in which something can be produced, and that's what's functional. And since this can be produced in other ways, it's nonfunctional automatically. Well, that's not the case. I mean, Trafix was the case that said that to have trade dress protection, the test of functionality, what they have to disprove, is that the device is essential to the use or purpose or provides a cost or other advantage. The trial court decided that they need not disprove both of those, and they have to. It's in the disjunctive for functionality. It's in the conjunctive for nonfunctionality. And what the trial court said was that he didn't need to see any evidence of a cost advantage, which is another glaring error in the proof at trial, and I'd like to talk a little bit about that. The specific quote from Trafix is, a feature is functional if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. The trial court said it need not address the second part. The trial court said, well... Cost. Correct. And there was no proof at trial as to the cost of the design. The proof at trial that related to the cost of the product was simply materials. They said, well, this is made of expensive materials, and therefore the design does not provide a cost advantage. They presented absolutely no proof of the cost of the design. The cost at trial was all materials cost. And if you look at the Apple case, which is cited in our brief, the Apple case says specifically that you have to consider whether or not the materials were part of the cost or whether it really related to the design. And I'd like to read the part from Apple that is, I think, important here. That would be helpful if you had it tabbed. Yes, it would be. Let me proceed with the court's... You're talking about Apple versus Samson? Yes. I'd like to move on to another point here that's addressed in the Leatherman case. And in Leatherman, and this goes to the issue that you raised at the very beginning of the argument, Your Honor, the point that there are various components to this trade dress. In Leatherman, the case was pretty simple. The Leatherman tool, which you may be familiar with, is kind of the Swiss army knife of tools. It's pliers, it's a screwdriver, it's a whole bunch of stuff. And there was a competing manufacturer that produced something. And here's another point I want to get to right away. First, we don't claim that this was not copied. We claim that our client had a right to copy it, right down to the last bolt, because there is no trade dress. That's the conundrum between patent protection and trade dress protection. Patent protection expires. The monopoly that's granted by a patent expires. At that point, it's dedicated to the public to use in competition. A trade dress is in perpetuity. If there is no trade dress, my client had every right to copy this to the smallest detail. But the fact that your client wanted to copy it in the smallest detail, when there were many other ways to design a French press, is indicative of the fact that your client thought there was a competitive advantage to looking exactly like Bodum's French press. I don't disagree with that, Your Honor. I don't disagree with that at all. But this is not a case about confusion. This is not a case about product confusion. No, I understand that. But I'm saying the fact that you are, I understand that. But what I'm saying is, your client recognized that there were distinctive features about the Bodum Chambord Carafe French press that it wanted to mimic. I think that's right. And I think it had every right to do that. Because there is no trade dress, because it's functional, because they didn't prove the non-functionality, my client could copy it down to the smallest detail. So you're just basically saying, yeah, it's an exact copy, so what? That's right. That's exactly right. It's an exact copy, so what? It doesn't matter. In the world of trade dress, if you have a functional item that you produce that's not protected by patent, the public has a right to copy it to the smallest bolt. So in this outfit, there's no such thing as trade dress. That's our point here, Your Honor. For all these other places, it doesn't matter whether they look alike or not. That's correct. It doesn't, because they're entitled, the public is entitled to copy this trade dress right to the smallest detail. And in Apple, although I don't have the quote in front of me, but in Apple what they said was, if the durability of the materials is important, then that can't be part of your design. For instance, in Apple they said, well, we had to use hardened steel. We had to use a certain type of glass. And those are all parts of the manufacturing cost, and therefore the cost of our phone is greater than, you know, the cost of other phones, therefore it doesn't provide a cost advantage. The Ninth Circuit said that's not enough. The Ninth Circuit said you can't, if you're going to talk about the design, talk about the design. Don't talk about the materials that you put into the design. That is not part of your trade dress. That's exactly what happened in this case. Mr. Anders and Mr. Bodum, Mr. Anders first said, I don't know anything about the cost of these materials. He provided no opinion on whether the device provided a cost advantage. Mr. Bodum took the stand, and he said, well, it depends on the material. Because the design itself can be made as expensive or as cheap as you would like, depending on what you put into it. Could be plastic or glass? Could be plastic, could be glass, could be, in this case, the materials are all high-end materials. Polished chrome, expensive borosilicate glass, and they provided, Bodum provided no opinion and no direct testimony about the cost, the comparative advantage, which is the second prong of what they had to disprove. There was no proof in the record. Mr. Bodum just said, well, it's the material. Here's the cost. It's kind of more expensive than our cheapest one. It's one of the most expensive ones we make. But that isn't the design. That's the material. So there was a complete failure of proof on the second prong of what's required to show non-functionality. I'd like to talk a little bit about the admission. Now, in the Arlington Specialties case, there were admissions made by the holder of the claimed trade dress about the functionality of this, and the court's familiar with this, these dop kits. And it went through and said how other dop kits were better. It basically derided its own product in order to show that there was no advantage provided by these dop kits. And the court said in Arlington Specialties that this is kind of odd. You've made an admission first that this is all functional. That admission was a presumption. Once you've made an admission that something is functional, there is a presumption. The way Bodum characterized it is it's just another one of the factors that goes into whether or not there's a trade dress. But that's not true. It's not just another factor. Where a holder of a purported trade dress claims and admits functionality, it creates a presumption. It's a claim against non-functionality. In this case, they really didn't do anything to say, to disprove what Mr. Bodum said. Mr. Bodum, in his advertisements, Bodum advertises this product as having the, quote, best functionality. Now, when I asked him that question at trial, what he meant, he said, well, I just meant that it works. That what? He meant what? That it works. I just mean that it works. Well, that's not what best functionality means. All these work, I guess. Yeah. What it means is it works the best. Best functionality means just that. And it couldn't be worded better for trade dress issues than it was. He's admitting that this is the best functionality, that indeed this product is functional. That was not disproven at trial. It's a presumption in their own admission they didn't overcome it. That by itself is enough to send this back to the trial court. As a matter of fact, that by itself is a failure of proof. And this court can enter judgment in favor of my client, based on the failure of proof of the cost issue and the failure to overcome the presumption raised by their own admission. I want to talk a little bit about the patents and the issue of the patents at trial. You might want to reserve some of your time. I thought I had reserved five minutes. Had I not? I don't know. You have 20 minutes. Okay. That's where it's clicking off here? That's what's left of the trial. All right. Well, I'd like to reserve, then, whatever I have left for Ricardo. Thank you. Thank you. Ms. Wing. Good morning, and may it please the Court. I want to start by addressing head-on the umbrella overarching concern of ATOP that there's a perpetual monopoly being sought here by Bodum in protecting the design of its iconic Chambord French press. This particular product, the Chambord, was designed, I keep forgetting if it was the 1930s or the 1950s, inspired by a castle in France called the Chambord, and there was these large towers with four legs coming down and a dome-shaped lid, and the very first French press was designed after this castle. Bodum acquired the company that owned this design in 1990 and since then had been promoting the Chambord, running commercials, spending millions and millions of advertising. All of this came into evidence at trial. And all Bodum's position is, Bodum has hundreds of designs of French press coffee makers. This is the bread and butter of their business. With the Chambord, that's their iconic design, and that's the one they seek to protect. There were many different presses in evidence. You've seen the screenshots in the brief that I provided. They were live in front of the jury, all set out in front of it on a table, and that shows you that there's not a perpetual monopoly. In fact, there's fierce competition in this market. You go on Amazon, and there are dozens of French presses that you can buy. They're not looking for a monopoly in the French press market any more than Volkswagen was looking for a monopoly on cars when it sought protection for the design of its Beetle. Volkswagen claimed no trade dress in the engine. What makes the Volkswagen work, what Volkswagen claimed with the Volkswagen Beetle, is the distinctive look of it. Same as us. We don't claim trade dress in the guts. All of these things have some sort of carafe to hold liquid and some sort of plunger to separate coffee grounds from that liquid. But that's the guts. What we're seeking to protect is the dress-up, the trade dress, the design, the exterior, iconic look of this product. The only issue that's been brought in this appeal is whether or not Bodum proved non-functionality to the jury. We asked the court, obviously, to affirm the jury's verdict, and that's for multiple reasons. Bodum demonstrated the arbitrary nature of the design elements, that it did not have to look that way, that it was ornamental, that it was done to make it look pleasing, not to affect the cost or quality of the item, and not essential to its use or purpose. There was also ample evidence, there's five factors, which the jury was instructed to in agreed jury instructions between the judge, Atop, and Bodum, of the five factors to consider, and the jury had evidence, I will admit, on both sides. There's the advertising Mr. Benak points out, but then there was also evidence of alternative designs, and there was also evidence of expert testimony about the non-practical advantage of using this particular design. And there I want to address what Mr. Benak said, that there was some sort of admission by Mr. Bodum, the owner of the company, that this product works best, the Chambord. That's simply not true. He said that it went unrebutted, and that it was not disproven at trial, which is simply not true. Both Mr. Bodum and a man named Mr. Grossenbacher, who is the president of Bodum US, testified that all of their hundreds of designs make great coffee. No design makes a better product over one over the other. So yes, there were certain advertisements that pictured the Chambord, but there's also advertisements that picture the Bodum Kenya, the Bodum Brazil, all of the many designs that Bodum has. And so this testimony, this evidence at trial, was in fact that there is no practical advantage to having this particular look to the Bodum Chambord. Now the Supreme Court is clear on what makes trade dress functional, and that's whether the design is essential to the use or purpose, or whether it affects the cost or quality. Bodum has proven both of these prongs, and I'll go through them one at a time. First, whether or not this design is essential to the use or purpose. We showed the jury that the design of the Chambord had nothing to do with the Chambord being able to make coffee. It doesn't have to look that way to work. In fact, having all of the various presses in front of the jury, the witnesses were able to show the jury that you can actually take the sleeve off of, say, a camping French press that's got a canvas sleeve on the outside of it, and you can take the frame off of the Chambord, and yet can switch the guts with the exterior design. That's plain and simple evidence before the jury that the designs are arbitrary and can be interchangeable between these guts of a French press coffee maker. Counsel, am I correct that the Chambord is the only one of Bodum's French presses that it seeks trade dress protection for? We have sent cease and desist letters in the past on one other product that is a 20-year product of Bodum, which is called the Kenya, but other than those two, that is correct. Well, he basically said, I don't know what you call that, an admission or just something that this is a copycat. He liked the way it looked, and they made one just like it. What's that mean? Well, that is quite compelling to me because, well, there was evidence that they intentionally copied. They sent pictures of the Chambord to their graphic designer and things like that to make their advertisements look the same as ours, and I think that that's why the jury concluded that there was willful trade dress infringement in this case. But that does indicate, now I agree there's still a separate analysis that has to be done on non-functionality, but that does indicate and is allowed to be considered by the jury that this look, this design is special and sells French presses. There's a reason why ATOP was successful in selling a French press because it was able to capitalize on Bodum's 25 years of advertising that preceded ATOP's 2014 creation of this product because it was just a design that was recognizable to the public as the classic French press but came at a cheaper price, which caused the consumers to want to buy it. And so that's exactly the point. Now, functionality under the law does not mean can the elements be used. The elements of our trade dress, there's a frame that comes down the Bodum press. It's metal. It can come in either copper or stainless steel. And then there's these very distinctive rounded feet at the bottom of the frame that are attached, and there's a vertical band that surrounds the frame. From there you have a C-shaped handle that has a distinctive bolt. He says they can copy down to the bolt. It truly is something that people recognize. And then there's a stainless steel lid on top and a round knob on top. And that's the dress-up of this product, and that's what people recognize as Bodum's. There's a name with all that advertising. Just the name itself, I assume, is known to a lot of people. Yes, absolutely. Well, I don't know. You say you have all kinds of designs, same company. Yes. So there's plenty of Bodums that are out there for people. If I was sent out to get one, I'd buy the cheapest one. And I think a lot of people would, but other people make a decision to buy one that has sort of the sleeker, higher-end look that the Chambord does. Bodum certainly offers many French presses that are lower cost, both to Bodum, to manufacturer, and to the consumer. And that actually plays right into this case, because one of the questions we're answering is, does the design of the Chambord provide a cost or quality advantage? That's one of the tests under the Supreme Court in traffics. Here, it does not. We designed the Bodum Chambord because it is classic and because consumers recognize it and want it as the higher-end line of the Bodum product. In fact, Bodum could abandon the Chambord and focus on things that provide Bodum with a price advantage. But instead, they continue to spend extra money to put this well-recognized design in front of consumers. It does the opposite of providing a price or quality advantage, which makes it satisfy the standard set in the traffics case. Was this before the trial court, that they admit that it's almost an exact copy? Yes, it was. So there's not any issue with that, then? That's correct. I believe that's why they haven't appealed on anything other than this question of functionality, because they know they don't have anything to say with regard to whether or not these products are confusingly similar. There have been cases that have found the intentional copying, sort of flagrant intentional copying, to be relevant to the inquiry of functionality. If I look through my tabs here, I can probably point you to one of those. It's a case in which there was actual reverse engineering. They sent the product back to say, go ahead and make it exactly like this, because they thought there was no trade dress. I'm not going to be able to cite it off the top of my head. We'll assume there are such things. But this court's decision in service ideas, that's out of the Seventh Circuit in 1988. He wants to look at this Leatherman tool case that was in the Federal Circuit, applying Ninth Circuit law. It came out of the Northern District of California. This Leatherman tool, that would create a monopoly if nobody else was able to make a small device that had a tiny screwdriver and a tiny tweezers and a tiny little scissors and little pliers and all of the things that are in a Leatherman. The Leatherman court found that each one of those things had to be shaped the way they were to fit in this little compact pocket device. If nobody else was able to make tools that fit in a little compact device, that's where you run into that concern that our circuit has said, that concern about a perpetual monopoly. But in service ideas, which is in this circuit, you've got a lot more analogous case. In fact, it's another beverage holder. It was a thermoserve beverage server. And the way the color scheme was put together and the specific look and design of the product is what this court looked at. And the court noticed that, of course, there was functional features. The court looked at the style, shape, color, the handle, the parts, the lid, the spout. The court didn't ignore the fact that a handle can serve to hold a product and that a spout pours the liquid out. But the court found that the design feature of a particular article is essential only if the feature is dictated by the functions to be performed. A feature that nearly accommodates a useful function is not enough. So this handle accommodates a function. The lid on top of the Shannon board accommodates a function. But it does not have to come in that appearance. And, oh, in fact, it's the Service Ideas case where Traex, T-R-A-E-X, was the copier. And they chose to combine all of the above elements of that thermoserve into an identical external design. They, in fact, reverse engineered it to incorporate that design. They intentionally copied. And Traex argued that it was functional because the product was essential for competition in the marketplace. Yet the court said, it strains the imagination to assert that someone designs a table, talking about another case that it's citing to, where it shows a yellow board, a masonite top, a black frame, a particular look. It strains the imagination that somebody would buy a folding picnic table because they prefer that table above all others. And that same underlying reasoning about the particular elements of a beverage server guided the Service Ideas case in ruling that there was non-functionality with regard to that beverage server. Traex, the infringer, could have adopted other functional features to distinguish its product from the thermoserve server. It took the easy route, as the court found, by copying the exterior appearance. I do want to address the utility patent issue and the exclusion of that evidence because I suspect that Mr. Benach may address that on his rebuttal. This is another. Traex comes into play again here. Traex said, if there is a utility patent on a product, even an expired utility patent, if the patent claim matches the element seeking trade dress protection, then that utility patent creates a presumption of strong evidence of functionality. But the traffics court was very specific on that point. The claim of the patent has to match the trade dress feature to be protected. Now, in the trial court, ATOP tried to introduce something like 13 or 15 different patents that they said, other products, not Bodum products, not ATOP products, other people's products in the housewares line of beverage makers. And some of those things that they tried to introduce were a utility patent on a knob that screwed on and off of the product, not something that's at issue here, about a plunger that worked in reverse so that the carafe could actually be used as a cup and people could drink out of it. They haven't brought those things up, apparently, in this appeal. They've only brought four of those patents in their brief before the court, one being the Hiscock patent. That's not even a French press coffee maker. It's a product that holds a coffee packet. And the utility patent is about this function of holding the coffee packet to brew the coffee like a teabag. The Keating patent that they raised is about a plunger. This is not a product that looks anything like the Chambord. And it's just talking about the utility of the plunger, something that's not part of our claimed trade dress. Same with the Portman patent. It's about the cylinder that holds liquid, not part of our claimed trade dress. And then the McGonigal patent that he raises is about a plunger where you can adjust it so it has varying positions, not something that either of our products even do. And again, dealing with the plunger, what we all agree is the guts of a French press coffee maker. None of these utility patents that they seek to introduce have anything to do with the design elements that we claim trade dress over. Again, this exterior close of our distinctive, iconic product. So to sum it, in a way, is this things that are superficial and could do without it? In other words, in order for it to function? That's exactly right. And we showed the jury French presses that sit flat on a counter without feet. We showed the jury French presses that have no handle at all. Like, for example, the camping press that I explained before. There are French presses that certainly don't have a metal frame like ours does in that very specific design that mirrors the castle that it was designed after. There's many French presses that do have a metal frame, but it's a complete encapsulation rather than the particular design that the Chambord does. These things are not necessary. What you need to have, and particularly if you look at milk frothers, which are built the exact same way French presses are, milk frothers tend to be just a round piece of glass and just a plunger that you put down with some sort of top on it to hold it, and the tops can come in various shapes. And that's the most bare-bones example of what these things can look like when you take the exterior design elements away. Ms. Wing, could you spend a moment or two on the costs connected with the design? Sure, absolutely. Because obviously there's a disagreement among the experts, and I'm going to ask you for Matt to speak to that also. The question being, does the design result from a comparatively simple, cheap, or superior method of manufacturing? That was jury instruction five on the topic of functionality to the jury, with the jury being considered that if that is the case, then there is some evidence that the design is functional. We introduced testimony from Mr. Bodom that the Chambord is not the cheapest design to make. He said, yes, of course, it depends on the material, but at the end of the day the Chambord is one of our more expensive products. We also introduced documentary evidence showing multiple different Bodom products that are less expensive to make than the Chambord. And so this factor falls squarely in Bodom's favor because Bodom spends extra money making sure that its figurehead design stays on the market. They spend money on the design, not for any functional advantage, because you can certainly go buy a plastic Bodom Kenya that's going to press coffee and give you a good hand-brewed, slow-brewed coffee just as well as the Chambord does, but it's not going to have that iconic look, which is what we're seeking to protect. From a practical standpoint, is this stuff people kind of put out so other people can see it, see that you got one or something? I don't know. I don't know. I keep one on my countertop, and I keep very little on my countertop, and I think it's quite beautiful. So I do think that people consider it to be a display item. We showed several advertisements throughout the trial, even without Bodom paying for advertisements. It gets put in Martha Stewart Living in beautiful breakfast-in-bed pictures and things like that. It got put in Barbie's mobile home in a Barbie advertisement. The Chambord is out there in advertisements as a piece of art, and, in fact, it's been recognized by Phaidon's Design Classics, a very recognized treatise on design as one of the 1,000 best designs in the United States. It's been recognized by the Museum of Modern Art as a classic, iconic design. This is all about the aesthetic when you're talking about the Chambord. Is design another word for trade dress? I don't think they're exactly synonymous, but the design here is what we are claiming as trade dress. Other people could claim things like color or shape as their trade dress, but here the design is our claim to trade dress. If there's no further questions, I am out of time. Thank you, Ms. Wood. Thank you. Mr. Bonner. I'll have to talk fast. The first thing I want to point out is that the counsel didn't tell you how they proved that there was no cost advantage. She didn't show, she didn't talk about the proof of trial being related only to the materials. She didn't tell you about the cost of the design, and that's the issue. As a matter of fact, I found the Apple case, which was not in my outline, and I apologize. What it says is Apple contends the iPhone design did not result from a comparatively simple or inexpensive method of manufacturing. Then they talk about because Apple experienced manufacturing challenges from the durability considerations for the iPhone and not from the design of the unregistered trade dress. According to Apple's witnesses, difficulties resulted from its choices of materials using hard and steel. That's what we have here. We have very expensive materials, nothing to do with the design. To answer your question, Your Honor, I want to show you. These are cease and desist letters that were sent to various sellers. This is plaintiff's exhibit PX156-439. This is what they claim is infringing their trade dress. This has the flat top. This has the plunger that's in a different shape. It's made of wood. It has really no bearing, any similarity at all to the dome top or the plunger. Is this somewhere in your brief somewhere? We talked a little bit about the broad nature, but we didn't point out the specific points relating to the cease and desist letters. They have 98 of these or 89 of these that they've sent. This is just one of them. This shows you the breadth of what they claim as a trade dress. This doesn't look anything like the Shamboard, and yet they sent a cease and desist letter to the manufacturer and seller of this device. That just goes to show how far they want to stretch this trade dress. Now, the idea that we copied this is because it represents the best functionality, because it is the cheapest to make, because it is one of the things. It doesn't have anything to do with the beauty of it. It has to do with the functionality of it. It represents the best functionality, as Juergen Bodum himself indicates. That's what this case is about. It doesn't have anything to do with how much advertising they spent. They could have spent billions of dollars. That doesn't go to functionality. If they want to spend a lot of money to promote their products, that's their right, but it doesn't change the functionality of their device, and that's what this case is about. With respect to the patents, it would have been nice if we could have had our expert talk about the patents, but they talked about the patents with their expert. I cross-examined their expert on the patents. I was not able to cross or to direct my expert on the patents because they were excluded. I don't know how you undo that, but that was baked into the cake. This has got to go back for a new trial on the issue of the patents. How can I be deprived of the right to talk about what Ms. Wing just talked about, the extent of the patents, the applicability of the patents? My expert was prepared to talk about that, and I wasn't allowed to do it. This is not a patent infringement case, but there should have at least been some kind of a hearing on the claims construction, and there was none. This case should go back for a trial based on the patents. When you just showed us the wooden grip, is it your position that, I guess it's called a French press, that there could be no trade dress in any one of these since the functionality seems so common? It is absolutely the most common thing in the world. There's a plunger, a carafe, a handle, a knob, a lid, whether it's a flat lid or whether it's the flat plunger. It is a coffee press. So your answer to Judge Fama is yes. Your position is that there can be no trade dress in any French press. Well, you know what? That goes a little beyond the record. I think what I'm saying is there can't be any trade dress in theirs, and the reason I say that is because theirs represents the best functionality. If someone wants to come up with a coffee press that has all kinds of flamboyant stuff on it and say, well, you know, this is certainly different than the rest, maybe, but that's not in the record. What's in the record here is a coffee press where they have been able, unable to disprove or prove non-functionality. The cost stuff is just out of the record. There's nothing in the record for the cost stuff. And, you know, what really got to me was the consumer product safety stuff that has to do with the plunger and the lid. You can't get any more functional than that. And the Leatherman case says, look, you can't just hang some flourish on something that's totally utilitarian and call it a trade dress. That's what Leatherman stands for, and that's what happened here, where you have a product configuration trade dress that covers the entire product, and then you hang a little flourish on it and say, well, this is different. This is our trade dress. I've used up my time, and thank you very much. Thank you. Thank you, Mr. Lane. The case is taken under advisement. The Court will proceed to the third hearing.